**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| **CAITLYN CLIFF, GEORGE DICKENS, III MELANIE FENLEY, ZACHARY GRUBER, PETER LEYH, MYLEE MCKINNEY, and CASEY TUGGLE, individually and on behalf of all others similarly situated,** | ) ) ) ) ) ) | |
| | ) | **CIVIL ACTION NO.** |
| | ) | **4:18-cv-00104-LGW-GRS** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SAVANNAH LAW SCHOOL, LLC, JOHN** | ) | **JURY TRIAL DEMANDED** |
| **MARSHALL LAW SCHOOL, LLC (DE),** | ) | |
| **JOHN MARSHALL LAW SCHOOL, JOHN** | ) | |
| **MARSHALL UNIVERSITY, JOHN** | ) | |
| **MARSHALL ONLINE, INC., and JMLS 1422,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### DEFENDANTS' MOTION TO DISMISS
### PLAINTIFFS' COMPLAINT

---

COME NOW DEFENDANTS Savannah Law School, LLC, John Marshall Law School, LLC (DE), John Marshall Law School, John Marshall University, John Marshall Online, Inc., and JMLS 1422, LLC (collectively "Defendants"), and by and through their undersigned counsel of record, submit this Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), showing as follows:

### I.    INTRODUCTION

It was Plaintiffs' haste—and not any Defendant's negligence—that catalyzed this lawsuit. Plaintiffs have sued Savannah Law School, LLC ("Savannah Law") and other improperly named Defendants under a bevy of theories because Savannah Law has announced that it will close **after**

"teaching out" its current students.  Plaintiffs filed this putative class action suit less than 48 hours after Savannah Law's leadership announced that the school would relocate *within Savannah* and would close its doors *after all current students graduated* (contrary to Plaintiffs' pleadings).  These misapprehensions—which could have been disabused with a Google search[1]—unfortunately characterize Plaintiffs' entire lawsuit.

But even taking Plaintiffs' pleaded facts (as wrong as they are) as true, they still fail to state claims under the pleading standards articulated in Fed. R. Civ. P. 8(a) and 9(b):

- Plaintiffs base multiple claims on the *assumption* that John Marshall Law School (Savannah Law's parent) may lose its ABA accreditation (it has not).  Those claims are, of course, rank speculation and not ripe, yet they are incorporated in Counts I, II, and III of the Complaint.

- Plaintiffs' negligence claim is really a reframed claim of educational malpractice—barred by many national courts and rebuked by Georgia and Eleventh Circuit precedent.  Further still, Plaintiffs do not plead facts showing a specific, cognizable duty that Savannah Law breached, nor do they show damages resulting from any such breach.

- Plaintiffs allege that Savannah Law has breached a contract with students who have been admitted but have not agreed to go to Savannah Law (even though contract claims

---

[1] See, e.g., Debra Cassens Weiss, Savannah Law School will close, faculty and students are told, ABA JOURNAL, *available at* <http://www.abajournal.com/news/article/savannah_law_school_will_close_students_and_faculty_are_told/> (last accessed Apr. 22, 2018) (noting in article published prior to filing of this suit that ABA rules required Savannah Law to allow current students opportunity to graduate).

Although several citations to Internet sources appear within this brief to provide the Court with a more complete view of these matters, the Court need not consider anything beyond the pleadings to dismiss Plaintiffs' Complaint.  Even if it did take notice of the contents of the provided websites, that would not convert this Motion to a motion for summary judgment, because "[n]otwithstanding Rule 12(d), courts may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion to a Rule 56 motion." *Stanifer v. Corin USA Ltd., Inc.*, No. 6:14-cv-1192-ORL-37DAB, 2014 WL 5823319, at *3 (M.D. Fla. Nov. 10, 2014).  Reliable, publicly available websites fit that exception. *See id.* (collecting cases citing to the Food and Drug Administration's website at motion-to-dismiss stage).

definitionally require an *accepted* contractual agreement).   Further, Plaintiffs' contract claims are not pleaded with any specificity and violate the Statute of Frauds.

- Plaintiffs utterly fail to plead their negligent misrepresentation claims with particularity or to plead facts showing that Plaintiffs exercised due diligence.

- Plaintiffs make a claim for "civil conspiracy," which is not a tort under Georgia law.

These technical deficiencies reflect a broader lack of merit.   Plaintiffs have brought a legally unsupportable case based on seeming misapprehensions about what the future holds for their legal educations.   Because Plaintiffs fail to state a claim upon which relief can be granted, the Court should ***DISMISS*** their <u>Complaint</u> with prejudice.

## II.     BACKGROUND

In Plaintiffs' apparent haste to file the first suit related to Savannah Law's March 21, 2018 announcement, they relied, in part, on sources such as the Above the Law[2] blog in framing their pleadings.   *See* <u>Complaint</u> at ¶ 51 n.7.   Their <u>Complaint</u> is, accordingly, rife with explicitly disprovable information.   However, at the Motion to Dismiss stage, the Court must "assume the veracity" of "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   *See also Roberson v. Northup*, 302 Ga. App. 405, 405, 691 S.E.2d 547, 547 (2010) (articulating meaningfully identical instruction under Georgia law).

As an initial note, this <u>Motion to Dismiss</u> does not address Plaintiffs' allegations pertaining to their eligibility for class certification, except to the extent those allegations also support their actual causes of action.   *See* <u>Complaint</u> ¶¶ 59-68.   Those class allegations are woefully insufficient

---

[2] *Above the Law* covers legal issues and gossip.   Other notable articles include, *e.g.*, David Lat, "Who are the Most Attractive 3Ls at NYU?", ABOVE THE LAW, *available at* <https://abovethelaw.com/2006/11/who-are-the-most-attractive-3ls-at-nyu/> (last accessed Apr. 23, 2018).

(for example, Plaintiffs curiously incorrectly tried to exclude every single out-of-state student in the school from their "class"), but they will be addressed at the class certification stage.[3]

In short, the Complaint alleges that Savannah Law "will close at the end of the Spring 2018 semester." Complaint ¶ 47. (Current students will, in fact, finish out their academic training and graduate from Savannah Law, and classes will be taught in another facility in Savannah). Plaintiffs also make multiple allegations about Savannah Law's accreditation, *see* Complaint ¶ 84, while simultaneously admitting that the school is accredited and has never lost that accreditation. *See id.* ¶¶ 41, 57 (tying current causes of action to future "risk" of losing accreditation). Plaintiffs also complain that the school held events for prospective students until shortly before the March 22, 2018 announcement that Savannah Law would eventually wind down, *id.* ¶ 49, allege that Savannah Law students believed they would take all classes at the Warren Candler Hospital building on Drayton Street, *id.* ¶ 36, and lament that the school has taught some classes via video-conferencing software. *Id.* ¶ 43. (Other law schools that offer similar services include Georgetown University Law Center and Emory Law).

Finally, Plaintiffs allege that students were only allowed to keep certain academic scholarships if they kept their Grade Point Average above a certain threshold, and state that because of the curve, that mark was "out of reach of more than 50% of the student body." *Id.* ¶ 53. (The law school's website's "Financial Aid" page, unsurprisingly, lists all relevant requirements). This is not unusual—after all, Georgia's most famous scholarship requires a 3.0 GPA to maintain eligibility.[4] Plaintiffs also plead no facts, at all, showing how the requirement

---

[3] Among Plaintiffs' class members is Peter Leyh, a citizen of New Jersey. *See* Notice of and Petition for Removal, Dkt. No. 1, ¶¶ 7-8.

[4] *See, e.g.*, *Maintaining Eligibility for the HOPE Scholarship*, GAFUTURES.ORG, *available at* <https://www.gafutures.org/hope-state-aid-programs/hope-zell-miller-scholarships/hope-scholarship/maintaining-eligibility-for-the-hope-scholarship/> (last accessed Apr. 19, 2018).

that a scholarship student maintain good grades was concealed or any Savannah Law statements that were deceptive.

Plaintiffs' allegations, even if they were true, would not support the causes of action Plaintiffs tie them to.  Because Plaintiffs' <u>Complaint</u> fails to state a claim upon which relief can be granted, the Court should ***GRANT*** Defendants' <u>Motion to Dismiss</u>.

## III.      ARGUMENT AND CITATION OF AUTHORITY

### A. Standard of Review

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also* O.C.G.A. § 9–11–8(a)(2)(A); *Benedict v. State Farm Bank*, FSB, 309 Ga. App. 133, 134, 709 S.E.2d 314, 316 (2011).  "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (affirming district court's dismissal of claim) (citing case).  Moreover, only well-pleaded *facts* may thwart dismissal under Rule 12(b)(6). The Eleventh Circuit Court of Appeals mandates that district courts "eliminate any allegations in the complaint that are merely legal conclusions" before deciding a motion to dismiss.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Allegations of fraud demand even more scrutiny.  Under Fed. R. Civ. P. 9(b), claims of fraud must be pleaded with particularity.  As construed by the Eleventh Circuit, that is a strict standard.  The Eleventh Circuit has noted that the "particularity rule serves an important purpose

5

in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior," and that Rule 9(b) is only "satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting case), *superseded by statute on other grounds as noted in Arthurs v. Global TPA LLC*, 208 F. Supp. 3d. 1260, 1266-67 (M.D. Fla. 2015).

Like in a normal diversity case, the district court in a removed Class Action Fairness Act action applies the substantive law of the state of filing and federal procedural law. *See, e.g.*, *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1197 (11th Cir. 2007) (CAFA intended to "promote the fair application of state law to multifarious parties in class actions"); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

With these standards in mind, Defendants show that Plaintiffs' allegations, even taken as true, do not state a claim upon which relief can be granted.

## B. Claims contingent on Savannah Law possibly losing accreditation—which has not occurred—are not ripe.

Plaintiffs request monetary compensation for events that have not happened, but unsurprisingly, Georgia law does not permit such speculative recovery. Plaintiffs seemingly base multiple counts on the premise that Savannah Law may lose accreditation at some point in the future:

- Count I—*See* <u>Complaint</u> ¶ 73 (alleging, in Count I, that "Defendants breached their duty to Plaintiffs and Class Members by failing to ensure SLS's ongoing viability and accreditation");

- Count II—*See id.* ¶ 80 (alleging, in Count II, that "[b]y their conduct described above," Defendants committed breach of contract without specifying whether conduct includes accreditation concerns);

- Count III—*See id.* ¶ 84 (alleging, in Count III, that "Defendants negligently supplied false information . . . when they represented that they operated and would continue to operate an ongoing, accredited law school . . . ").

Plaintiffs also reincorporate Counts I-III in their claims for punitive damages and attorneys' fees. *See id.* ¶¶ 96, 99.

Under Georgia law, a plaintiff may not recover for a speculative, future harm. "Absent an actual case or controversy," courts decline to address "specific concerns about . . . future conduct . . . ." *Trotman v. Velociteach Project Mgmt., LLC*, 311 Ga. App. 208, 212, 715 S.E.2d 449, 454 (2011). "Concerns based wholly on speculation about what might or might not occur at some point in the future present nothing for review." *Id.* Rather, a "controversy is justiciable when it is appropriate for judicial determination. It must be definite and concrete, touching the legal relations of parties having adverse legal interests, rather than being hypothetical, abstract, academic or moot. The controversy must be such that it will be resolved immediately and definitely by the judicial declaration." *Bd. of Trustees of Employees' Ret. Sys. of Georgia v. Kenworthy*, 253 Ga. 554, 557, 322 S.E.2d 720, 722–23 (1984). In practice, that means that courts will not resolve questions about future business disputes, *Trotman*, 311 Ga. App. at 212, 715 S.E.2d at 454, "merely proposed legislation," *Fulton Cty. v. City of Atlanta*, 299 Ga. 676, 678, 791 S.E.2d 821, 824 (2016), or future

payment obligations pursuant to court order. *Mullin v. Roy*, 287 Ga. 810, 812, 700 S.E.2d 370, 372 (2010).

Plaintiffs present "[c]oncerns based wholly on speculation about what might or might not occur in some point in the future" when they prognosticate about the American Bar Association's accreditation decisions months or years down the line. *Trotman*, 311 Ga. App. at 212, 715 S.E.2d at 454. As Plaintiffs themselves admit, no accreditation decision has been made yet. Complaint ¶¶ 41-42. Like the future payment obligations in *Mullin*, 287 Ga. at 812, 700 S.E.2d at 372, or the *potential* legislation in *Fulton County*, 299 Ga. at 678, 791 S.E.2d at 824, a loss of accreditation is a potential future event that has not been decided and likely will not happen at all. Plaintiffs cannot base causes of action on events that have not occurred. Because Plaintiffs' accreditation accusations undergird Counts I, II, and III, at least in part, those counts should be dismissed.

## C. Plaintiffs' negligence claim must be dismissed.

Plaintiffs fail to allege facts that would state a claim for negligence. They attempt to reframe a core claim of educational malpractice as a routine negligence claim—but Georgia courts (and district courts in the Eleventh Circuit) have denounced such claims, and a supermajority of national authority joins that assessment. Moreover, Plaintiffs do not actually articulate a cognizable legal duty that Defendants owed them and then breached. Finally, Plaintiffs do not adequately plead facts linking Defendants' purported negligence to any actual damages. Instead, they offer pure speculation about how their legal careers may unfold years or decades in the future. Because Plaintiffs' negligence claim fails for two independent reasons, it should be dismissed.

First, Plaintiffs make an impermissible educational malpractice claim against Defendants disguised as a routine negligence claim. Plaintiffs lob broad and vague complaints against the education they received at Savannah Law, stating that Defendants "owed a duty to Plaintiffs and to class members to ensure that the education and/or degrees they received through SLS would

prepare and enable them to enter careers as lawyers or law-related fields." Complaint ¶ 70. They further allege that Savannah Law owed them "continuous operations reasonably free of disruptions throughout each academic year." Id. ¶ 70. They layer other complaints above these basic, "my-degree-isn't-good-enough" assertions—i.e., that tele-learning was unacceptable, that Savannah Law breached a duty to remain accredited (addressed above), and Savannah Law owed Plaintiffs a duty to ensure that all academic credits would count towards a Savannah Law degree or degree earned in Savannah.[5] Id. ¶ 71.

These are fundamentally claims for educational malpractice—that is, claims that a school did not do a good enough job educating its students. At their core, educational malpractice claims ask courts to second-guess complex educational decisions, and courts have rightly declined to wade into that morass. Here, all of Plaintiffs' complaints stack onto their bedrock assertion—that Defendants "owed a duty to Plaintiffs and to class members to ensure that the education and/or degrees they received through SLS would prepare and enable them to enter careers as lawyers or law-related fields." Complaint ¶ 70.

Courts proscribe these claims for a reason. For example, claims that a school failed by "not providing tutoring services or otherwise enabling [students] to receive a meaningful education" require courts to delve into unfamiliar territory, and they "present difficult, if not insuperable, problems to a court attempting to define a workable duty of care." *Ross v. Creighton Univ.*, 957 F.2d 410, 415 (7th Cir. 1992). Any "claim that educational services provided were inadequate constitutes a claim for 'educational malpractice'" and should fail. *Rockwood v. Shoen*, 145 F. Supp. 3d 718, 724-25 (S.D. Ohio 2015) (dismissing complaint on the pleadings because it

---

[5] This allegation is, additionally, untethered from reality. Plaintiffs' credits will count towards a degree from Savannah Law School, which is required by ABA mandates to "teach out" its current students and allow them to complete their academic programs.

alleged impermissible educational malpractice claim).   Likewise impermissible were "allegation[s] that the University was somehow negligent in changing one of her grades from a C+ to a C, awarding [the student] too low of a grade in another class, and placing a hold on her student account" in another case.  *Gokool v. Oklahoma City Univ.*, No. CIV-16-807-R, 2016 WL 10520949, at *7 (W.D. Okla. Dec. 29, 2016), *aff'd*, 716 F. App'x 815 (10th Cir. 2017).   The Supreme Court itself has cautioned against courts wading into educational second-guessing, noting that the "decision of an individual professor as to the proper grade for a student in course" are the very types of questions that do not lend themselves to "the procedural tools of judicial or administrative decision-making." *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978).  Indeed, imagine the outer limits of such a position—could a student who graduated from Virginia Law (#9 in the U.S. News & World Report Rankings) sue her alma mater for failing to provide the same education as provided at Yale Law (#1 in the same rankings)?  How would a court decide and delineate a "proper" education?  Courts have acknowledged that these core workability problems should defeat educational malpractice claims.

Georgia has acknowledged this doctrine and spoken favorably of the majority position.  In *Diallo v. Am. InterContinental Univ.*, the Court of Appeals declined to explicitly rule on the educational-malpractice doctrine, but it cited to cases "noting that the majority of courts have rejected claims that attack the general quality of education provided to students," and further cited cases that questioned "whether students' numerous claims, including fraud, constituted an improper attempt to circumvent the principle that there was no cognizable cause of action for educational malpractice in that state." *Diallo v. Am. InterContinental Univ., Inc.*, 301 Ga. App. 299, 302 n.10, 687 S.E.2d 278, 282 n.10 (2009).  District Courts in the Eleventh Circuit also look askance on educational malpractice claims. *See, e.g., C.P. v. Leon Cty. Sch. Bd.*, No. 4:03 CV 65

RH/WCS, 2005 WL 2133699, at *5 (N.D. Fla. Aug. 27, 2005) (dismissing claim because it was essentially claim for educational malpractice and Florida law likewise recognized no such action).

The general national proscription on educational malpractice claims fits cleanly into general negligence analysis, because it establishes that there is no cognizable legal duty from a university to its students regarding the intricacies of the education that the university provides. *See Gokool*, 2016 WL 10520949, at *7 (noting school's lack of duty to former student in terms of educational malpractice). That lack of a cognizable, enforceable duty to provide a certain kind of education makes sense as well: as the courts above themselves stated, judges would be hard-pressed to define what education "adequately prepared" students for their future careers. Legal doctrine should not invent a duty that puts courts in a position to do just that. Accordingly, Plaintiffs cannot show a breach of a legally cognizable duty.

Further still, even if Plaintiffs showed a breach of some cognizable duty, they could not link it to damages. They plead only that they "suffered damages as a direct and proximate result of Defendants' actions and/or failure to act." Complaint ¶ 76. But they do not plead any facts that would even suggest what damages resulted from Defendants' alleged negligence. Plaintiffs do not plead that any member of their "class" lost a job offer they otherwise had; they do not plead any facts that would show an actual erosion in the value of their degree from Savannah Law's eventual closure after they all graduate. They do not plead facts showing how they were harmed by taking an occasional video-conferencing class; and they do not allege that anyone in the class *ever lost a scholarship* because of Savannah Law's requirement that scholarship students maintain good grades.[6] As further evidence of the speculative nature of Plaintiffs' damages, Plaintiffs have not

---

[6] Plaintiffs plead that "a significant number of scholarship students lost their scholarships" because of Savannah Law's grading requirements. Complaint ¶ 55. But Plaintiffs do not plead that any of those students are (1) named Plaintiffs, or even (2) part of their putative class. Because Plaintiffs inartfully tried to omit any non-Georgia citizen who is a student at Savannah Law from their class, Complaint ¶ 61, it is

pleaded facts showing that they will take or pass the Georgia Bar Exam, a prerequisite to practice law in this state.

These conclusory statements do not adequately plead damages.  Other federal courts have held that conclusory allegations that plaintiffs "have suffered and will continue to suffer irreparable damage to their business and reputation" do not sufficiently state a claim for damages. *Geller v. Von Hagens*, No. 8:10-CIV-1688-EAK, 2010 WL 4867540, at *4 (M.D. Fla. Nov. 23, 2010).  *See also Travelers Indem. Co. v. Peacock Constr. Co.*, 423 F.2d 1153 (5th Cir. 1970) (damages award "cannot be predicated upon pure speculation"); *Ogden v. Wax Works, Inc.*, 29 F. Supp. 2d 1003, 1019-20 (N.D. Iowa 1998) (assertion that Plaintiff would require college degree to secure equivalent employment was unduly speculative).   Unlike in many analogous cases, Plaintiffs will not even lose the opportunity to graduate—they seemingly worry they will lose the *prestige* of graduating from a law school that is still active.  Setting a value for these loss-of-prestige-and-also-video-conferencing "damages" is the business of Delphi, not of the courts.  And of course, the general pleading maxims apply here too—that is, a complaint cannot make conclusory legal statements in the place of facts.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).  Any purely conclusory statement that Plaintiffs' interests have been eroded bears no weight and do not prevent dismissal.

Plaintiffs' negligence claim fails twice over.  They do not allege any specific facts showing that Savannah Law had a cognizable legal duty to them—in fact, they try to reframe impermissible "educational malpractice" claims as negligence claims.  Further still, they plead no facts that would actually demonstrate damages, offering only either legal conclusions or total speculation about the

---

impossible to know whether any actual putative class member is part of the alleged group of scholarship recipients who subsequently lost their scholarships.

erosion of a law degree's value over the next forty-plus years.  Those bare-bones, paint-by-numbers allegations are not enough, and the Court should dismiss Plaintiffs' negligence claim.

### D.  Plaintiffs fail to state a claim for breach of contract.

Although not exactly a model of clarity, Plaintiffs' Breach of Contract claims (Count II), to the extent they can be deciphered, should be dismissed.  The Complaint does not reveal (1) what contractual benefits Savannah Law purportedly promised; (2) the form of the contract, if any; and (3) how the Plaintiffs purportedly accepted the contract.  Plaintiffs' shotgun pleading makes teasing these issues out from the general factual allegations impossible.

To the extent they are understandable, Plaintiffs' breach of contract claims still fail in a variety of ways.  First, they comingle multiple categories of Plaintiffs that constitute the putative "class."  That "class" consists of current students at Savannah Law, admitted students who have not matriculated, and students who have simply applied to the school but *not* been admitted.  Complaint ¶ 60. (The "class," however, tried to only contain Georgia citizens, in a curious exclusion of Savannah Law's other students).  These three groups—students, accepted-and-committed students, and admitted students—are obviously different, and their breach-of-contract claims are likewise divergent.

Start with the admitted-only students.  Plaintiffs somehow pleaded breach of contract for students who have been *admitted*—but have not committed to *attend*—Savannah Law.  But no contract exists between these students and Savannah Law, because they have not accepted the offer Savannah Law made to them.  As these law students would have learned in contracts class, acceptance is an essential element of contract formation.  "The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." O.C.G.A. § 13-3-2.  The Georgia Court of Appeals has elaborated: "[a] mere offer or proposition, until accepted, may be

13

withdrawn.... If no time is prescribed for accepting an offer, it must be done within a reasonable time." *Amwest Sur. Ins. Co. v. RA-LIN & Assocs., Inc.*, 216 Ga. App. 526, 530, 455 S.E.2d 106, 109 (1995). Indeed, when a student has not yet enrolled in a university, it is common sense that she does not have a contract with the school. *See, e.g.*, *Chiaka v. Rawles*, 240 Ga. App. 792, 794, 525 S.E.2d 162, 164 (1999) (student who did not complete mandatory pre-requisites and never attained regular admission status could not enforce contract with school, even if one existed). No admitted-only students can state a breach of contract claim, and their Count II claims must be dismissed.

The contract claims of actual enrolled students fare no better. No Plaintiffs plead that any of them had a written contract with Savannah Law School. *See* <u>Complaint</u> ¶¶ 78-82 (claiming contract "was formed" but describing no written contract). However, Savannah Law School offered only a three-year full-time degree or a four-year part-time degree. Neither of these degrees could be completed within one year, and they were both therefore obligations which must be in writing to be enforced, pursuant to O.C.G.A. § 13-5-30. That statute provides:

> To make the following obligations binding on the promisor, **the promise must be in writing and signed by the party to be charged therewith** or some person lawfully authorized by him:
>   (1) A promise by an executor, administrator, guardian, or trustee to answer damages out of his own estate;
>   (2) A promise to answer for the debt, default, or miscarriage of another;
>   (3) Any agreement made upon consideration of marriage, except marriage articles as provided in Article 3 of Chapter 3 of Title 19;
>   (4) Any contract for sale of lands, or any interest in, or concerning lands;
>   **(5) Any agreement that is not to be performed within one year from the making thereof;**
>   (6) Any promise to revive a debt barred by a statute of limitation; and
>   (7) Any commitment to lend money.

O.C.G.A. § 13-5-30 (emphasis added). When a "contract" cannot be completed within one year, it cannot be enforced without the requisite writing. *See, e.g.*, *Bithoney v. Fulton-DeKalb Hosp.*

*Auth.*, 313 Ga. App. 335, 336, 721 S.E.2d 577, 579 (agreement for 15-month payment schedule was unenforceable as oral arrangement); *Price v. Univ. of Al.*, No. 03-15511, 2004 WL 1253201, at *1-2 (11th Cir. Apr. 20, 2004) (holding, under Alabama Statute of Frauds, that seven-year university contract was unenforceable because not written).

That Statute of Frauds problem bespeaks a larger issue.  Breach-of-contract claims against private colleges can only be cognizable when a student articulates a *specific agreement* with the college, the source memorializing that agreement, and how the agreement was breached.  *See, e.g.*, *Morehouse College, Inc. v. McGaha*, 277 Ga. App. 529, 627 S.E.2d 39 (2005) (student stated claim for breach of contract when college ignored specific portions of student disciplinary proceedings handbook).  Such a contract must be pleaded and shown specifically.  A student may not simply point to any paperwork exchanged between her and a university and claim that it is a contract.  *See Carr v. Board of Regents of Univ. Sys. of Ga.*, 249 F. App'x 146, 150-51 (11th Cir. 2007) (student handbook was not contract when it disclaimed contractual construction and was not accompanied by contemporaneous writings between student and university representative).

But that is what Plaintiffs do here.  They do not plead facts showing a binding written agreement at all.  More still, they do not plead what that binding written requirement required Savannah Law to do, and they do not plead facts showing how Savannah Law breached that agreement.  Nor do they attach any purported contract to their <u>Complaint</u>.  Instead, they just recite their same complaints and frame them as a "breach of contract."  Rule 8(a) demands more, and Plaintiffs have failed to state a claim for a breach of contract.

### E.  Plaintiffs fail to state a claim for negligent misrepresentation.

Plaintiffs fail to state a claim for negligent misrepresentation.  They plead that Defendants negligently supplied false information about scholarships, <u>Complaint</u> ¶¶ 85-86, and they reiterate their general educational malpractice claims, *id.* ¶ 84.  The educational malpractice claims fail as

described above. The scholarship claims likewise fail because Plaintiffs do not plead facts sufficient to identify any actual misrepresentations regarding scholarships, because information provided about Savannah Law's scholarships was (1) truthful and (2) not concealed, because the students did not reasonably rely on some of the representations asserted, and because Plaintiffs have not been proximately damaged by any of the purported misrepresentations.

First, Plaintiffs do not plead negligent misrepresentation with any particularity under Fed. R. Civ. P. 9(b). They do not identify particular statements Savannah Law made, when they were made, or their context or format. Instead, Plaintiffs provide their own broad-strokes interpretation of what they perceived Savannah Law's "promises" to be—"represent[ations] that scholarship students would have the reasonable opportunity to maintain a 2.75 GPA" and "that they operated and would continue to operate an ongoing, accredited law school on the SLS campus with classes taught by SLS faculty." Complaint ¶¶ 84-85.

Under Georgia law, the tort of negligent misrepresentation must be pleaded with particularity. *Osprey Cove Real Estate, LLC v. Towerview Const.*, *LLC*, 343 Ga. App. 436, 441, 808 S.E.2d 425, 430 (2017). And federal courts in the Eleventh Circuit look to state law when determining whether negligent misrepresentation claims sound in fraud and must therefore be pleaded according to Rule 9(b). *See Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) (looking to Florida law's categorization of negligent misrepresentation and concluding that Rule 9(b) requirement applied).

Under Eleventh Circuit law, to comply with Rule 9(b), Plaintiffs must plead facts showing:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants obtained as a consequence of the fraud."

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d at 1310.  Plaintiffs have pleaded no such facts. They have not pleaded precise statements at all, much less articulated when those statements occurred.  They have not pleaded facts showing which statements allegedly misled Plaintiffs and how, nor have they shown what Defendants received because of these un-named misleading statements.  In short, Plaintiffs' claim for negligent misrepresentation is woefully noncompliant with Rule 9(b), and it must be dismissed.

Moreover, to the extent Plaintiffs' <u>Complaint</u> *does* plead facts attempting to show negligent misrepresentation, they still do not state a viable claim because Defendants are not the kind of Defendants for whom negligent misrepresentation is intended under Georgia law.  Plaintiffs are law schools and law school administrators, which are not among the entities generally considered "professionals" under Georgia law.  *See, e.g.*, O.C.G.A. § 9-11-9.1(g) (listing 26 professions for professional affidavit requirement but omitting teachers, professors, or educators).  "The theory of liability for negligent misrepresentation generally applies to the professional defendants only, who provide information that is false through failure to exercise reasonable care or competence in obtaining information that is relied upon by a third party and such reliance is foreseeable."  *Smiley v. S & J Investments, Inc.*, 260 Ga. App. 493, 496, 580 S.E.2d 283, 287 (2003).  Georgia's courts have been clear that negligent misrepresentation was generally intended for a specific subgroup of complainants—those who did not have a direct relationship with an advice-giving professional, but nevertheless relied on his statements and were injured therefrom.  In other words, "a cause of

action for negligent misrepresentation generally applies to professional or expert defendants, who provide false information through the failure to exercise reasonable care, upon which foreseeable parties reasonably rely."[7]   And as Georgia's federal courts have also made clear, no negligent misrepresentation claim can lie for breach of a promise that should have been memorialized in writing under the statute of frauds.  *Breckenridge Creste Apartments, Ltd. v. Citicorp. Mortg., Inc.*, 826 F. Supp. 460, 466-67 (N.D. Ga. 1993).  Generally, then, in framing their grievance as a purported negligent misrepresentation, Plaintiffs have elected an inapplicable theory of recovery under Georgia law.

Further still, proper disclosures by the allegedly offending party mitigate any negligent misrepresentation claim under Georgia law, and Plaintiffs' Complaint (even taken as true) reveals that Savannah Law revealed much of the information Plaintiffs complain they did not know. Plaintiffs allege that Defendants negligently "represented that scholarship students would have the reasonable opportunity to maintain a 2.75 GPA and, thus, access to their scholarships," Complaint ¶ 85.  *See generally* Complaint.  They do not allege that Defendants concealed that a GPA cut-off existed to maintain scholarship eligibility.  *See generally id.*

Georgia courts have previously noted that claims of negligent misrepresentation against a university fail as a matter of law when the university disclosed adequate information to the student. In *Chiaka v. Rawles*, 240 Ga. App. 792, 795, 525 S.E.2d 162, 165 (1999), the Court of Appeals affirmed the grant of summary judgment to a university in a student's suit alleging the university misled him about the existence of a particular doctoral program.  The trial court held, and the Court of Appeals affirmed, that the student's failure to peruse the student handbook that revealed the

---

[7] *Asuamah v. Haley*, 293 Ga. App. 112, 124, 666 S.E.2d 426, 436 (2008), *rev'd sub nom. on unrelated grounds Cendant Mobility Fin. Corp. v. Asuamah*, 285 Ga. 818, 684 S.E.2d 617 (2009), and *vacated in unrelated part sub nom. Asuamah v. Cendant Mobility Fin. Corp.*, 301 Ga. App. 879, 690 S.E.2d 861 (2010).

non-existence of an African American Studies doctorate was fatal to his claim, because that failure to read the manual showed that any reliance on the university's purportedly erroneous statements was unreasonable.  *Id.* at 794, 525 S.E.2d at 164.

Likewise here, Plaintiffs have not pleaded any concealment of the information they describe.[8]  And without that concealment, Plaintiffs fail to plead any facts showing that they exercised reasonable diligence to discover these relatively basic, open facts about law school grades and scholarships.  Failure to plead facts showing that reasonable diligence is fatal to a negligent misrepresentation claim.  *Chiaka*, 240 Ga. App. at 794, 525 S.E.2d at 164.

Finally, no facts are pleaded that show damages proximately resulting from any purported misrepresentations.  "Proof of actual economic loss proximately resulting from the defendants' negligent misrepresentation is an essential element of a negligent misrepresentation claim. . . . Thus, absent evidence that the plaintiff suffered actual economic damage as a proximate result of the alleged misrepresentation, the claim fails as a matter of law."  *Legacy Acad., Inc. v. Doles-Smith Enterprises, Inc.*, 337 Ga. App. 575, 578, 789 S.E.2d 194, 198–99 (2016), *reconsideration denied* (June 28, 2016).  Until a party "suffer[s] economic loss, [it does] not even *have* a claim for negligent misrepresentation."  *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 427, 479 S.E.2d 727, 730 (1997) (emphasis in original).  Plaintiffs have not pleaded

---

[8] And of course, Savannah Law actually *did* disclose this information.  Savannah Law's student handbook notes that Civil Procedure I and II, Contracts I and II, Real Property I and II, Torts I and II, and Legal Research, Writing, and Analysis I and II have a median grade of "B-" (in other words, a 2.7).  Savannah Law School Student Handbook 37, *available at* <https://www.savannahlawschool.org/wp-content/uploads/Savannah-Complete-Student-Handbook_3.11.14.pdf> (last accessed Apr. 22, 2018).  The "Examination and Grading" section of the Student Handbook would be a questionable place to conceal information about examinations or grading.  Savannah Law's website also discloses the number of students in each class year receiving conditional scholarships and the number of students who had those scholarships reduced or eliminated.  *See* ABA Required Disclosures, Savannah Law School, *available at* < https://www.savannahlawschool.org/future-students/3189-2/> (last accessed Apr. 30, 2018) ("Conditional Scholarships" section in Standard 509 Information Report).

facts showing any actual, specific damages arising from the alleged negligent misrepresentations. As explored above, Plaintiffs do not plead facts showing that any member of their "class" lost a job offer they otherwise had, and they do not plead any facts that would show an actual erosion in the value of their degree from Savannah Law's closure. Because they cannot show any damages arising from purportedly negligent misrepresentations, these claims fail.

Importantly, Plaintiffs cannot conflate the money they spent on tuition with damages arising from a negligent misrepresentation. In *Legacy Acad., Inc. v. Doles-Smith Enterprises, Inc.*, the Court of Appeals analyzed the claims of franchisees who alleged the franchisor owner negligently misrepresented the state of the business in an offering circular. *Legacy Acad., Inc. v. Doles-Smith Enterprises, Inc.*, 337 Ga. App. 575, 580–81, 789 S.E.2d 194, 199–200 (2016), *reconsideration denied* (June 28, 2016). The Court of Appeals held that the franchisees could not recover the $40,000 franchise fee they paid, nor the $200,000 in loans they took out to outfit their new franchise, as damages for a purported negligent misrepresentation, because those claims sounded in rescission and were not consequential damages. Likewise here, Plaintiffs must plead facts showing actual, concrete damages occurring *beyond* their mere payment of tuition and expenditure of time in attending Savannah Law. They have failed to do so.

Plaintiffs' negligent misrepresentation claim fails for three independent reasons. First, they do not plead the purported misrepresentations with the incident-specific detail that Fed. R. Civ. P. 9(b) requires. Second, they do not plead facts showing that they exercised reasonable diligence. Finally, they do not plead facts showing that any recoverable damages proximately flowed from Defendants' purported misrepresentations. Accordingly, this claim must be dismissed.

**F.  Plaintiffs state no claim for civil conspiracy.**

Plaintiffs do not state a cognizable claim for civil conspiracy, because Georgia law does not provide a separate cause of action for conspiracy. Because all of Plaintiffs' other claims fail

as a matter of law, as shown herein, this claim has no bedrock upon which to rest, and it accordingly fails.  "[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity" according to Rule 9(b).  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007).  Likewise, under Georgia procedure, "[i]n all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity."  O.C.G.A. § 9-11-9(b).  Plaintiffs have failed to plead specific statements under the Eleventh Circuit's Rule 9(b) standard to support their "conspiracy" claim.

But the claim is not only infirm because of its improper pleading.  Under Georgia law, there is "no such thing as a civil action for conspiracy.  There is an action for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone. . . . [N]o civil liability is incurred for the conspiracy, but only for the overt acts of the conspirators."  *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 264 Ga. 295, 297, 443 S.E.2d 833, 835 (1994) (citing case) (emphasis omitted).  Plaintiffs have failed to plead facts showing any underlying acts of wrongdoing or "overt acts" of any "conspirators."  Accordingly, no "damages caused by acts pursuant to a formed conspiracy" exist here, as required by Georgia law.  Plaintiffs have improperly pleaded an inviable cause of action.  Their claims fail as a matter of law.

### G. Punitive Damages and Attorneys' Fees

Plaintiffs have failed to plead facts showing their entitlement to punitive damages or attorneys' fees, because they have failed to plead facts supporting any of their underlying tort or contract claims.  Under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1.  If a Plaintiff fails to even adequately *allege* any actionable tort claims, those punitive damages are unavailable.

*See, e.g.*, *Roofing Supply of Atlanta, Inc. v. Forrest Homes, Inc.*, 279 Ga. App. 504, 508, 632 S.E.2d 161, 165 (2006) ("Because Forrest's claims for punitive damages and attorney fees would have been awardable only if Forrest had prevailed on its tort claims, they were properly dismissed as well.").  So too for attorneys' fees.  *Lines v. City of Bainbridge*, 273 Ga. App. 420, 422, 615 S.E.2d 235, 236-37 (2005) (noting that when evidence showed no underlying tort, attorneys' fees could not be awarded).

Plaintiffs cannot rest their punitive damages or attorneys' fees requests on the shaky foundation of their improperly pleaded substantive claims.  Those requests must likewise be dismissed.

## IV.  CONCLUSION

"File first; verify later" is no way to launch an ill-conceived and improperly vetted lawsuit against a law school.  Unfortunately, that is what happened here.  As a result, Plaintiffs' <u>Complaint</u> does not reflect several realities of Savannah Law's closure—that is, that all current students will be "taught out" and will have the opportunity to graduate from Savannah Law School, in Savannah.

But even taking Plaintiffs' erroneous assertions as true, their <u>Complaint</u> fails to state claims upon which relief can be granted.  Three of their claims, at minimum, rest on the assertion that John Marshall Law School with lose its accreditation sometime in the future.  Those claims are unripe and are not cognizable as a matter of law.  Plaintiffs' claim of breach of contract based on some contracts that were never accepted (an untenable position), fail to plead the existence of written contracts even when the Statute of Frauds demands those contracts be written, and fail to plead any specific contractual obligations on the part of Defendants.  They reframe impermissible "educational malpractice" claims as claims for negligence, and they fail to plead that any alleged breach proximately caused non-speculative damages.  They ignore the Rule 9(b) pleading standard

for negligent misrepresentation claims, and they fail to plead facts showing reasonable reliance or diligence on the part of Plaintiffs.

This suit is not legally tenable.  It should not have been filed.  Defendants respectfully request that the Court *DISMISS* Plaintiffs' Complaint with prejudice under Fed. R. Civ. P. 12(b)(6).

THIS 10TH DAY OF MAY, 2018.

BOUHAN FALLIGANT LLP

By:    /s/ Todd M. Baiad
       TODD M. BAIAD
       Georgia Bar No. 031605
       LUCAS D. BRADLEY
       Georgia Bar No. 672136

       *Attorneys for Defendants*

Post Office Box 2139
Savannah, GA 31402
Telephone:  912/232/7000
Facsimile:  912/233/0811
Email:  tmbaiad@bouhan.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| **CAITLYN CLIFF, GEORGE DICKENS, III<br>MELANIE FENLEY, ZACHARY GRUBER,<br>PETER LEYH, MYLEE MCKINNEY, and<br>CASEY TUGGLE, individually and on behalf<br>of all others similarly situated,** | )<br>)<br>)<br>)<br>) | |
| | )<br>)<br>) | **CIVIL ACTION NO.**<br>**4:18-cv-00104-LGW-GRS** |
| **Plaintiffs,** | )<br>) | |
| **v.** | )<br>) | |
| **SAVANNAH LAW SCHOOL, LLC, JOHN<br>MARSHALL LAW SCHOOL, LLC (DE),<br>JOHN MARSHALL LAW SCHOOL, JOHN<br>MARSHALL UNIVERSITY, JOHN<br>MARSHALL ONLINE, INC., and JMLS 1422,<br>LLC,** | )<br>)<br>)<br>)<br>)<br>) | **JURY TRIAL DEMANDED** |
| **Defendants.** | )<br>)<br>) | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

Respectfully submitted, this 10th day of May, 2018.

BOUHAN FALLIGANT LLP

By:     /s/ Todd M. Baiad_____
        TODD M. BAIAD
        Georgia Bar No. 031605
        *Attorneys for Defendants*

Post Office Box 2139
Savannah, Georgia 31402-2139
P:  (912) 232-7000
F:  (912) 233-0811
tmbaiad@bouhan.com